☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>information about the location of the cellular<br>telephone assigned call number 414-736-5216 | )<br>)<br>)<br>)    Case No.  26-931M(NJ)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    May 11, 2026                  *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.      ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Honorable Nancy Joseph                  .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    4/27/2026 @ 4:06 p.m.

*Judge's signature*

City and state:        Milwaukee, WI              Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular device assigned (414)-736-5216 (referred to herein and in Attachment B as "the Target Cellular Device"), that is in the custody or control of AT&T and Dish Wireless LLC (referred to herein and in Attachment B as the "Provider"), AT&T is located at 11760 U.S. Highway 1, Suite 300 North Palm Beach, FL 33408, and Dish Wireless LLC is located at 9601 S. Meridian Blvd Englewood, CO 80112.

2. The Target Cellular Device.

**ATTACHMENT B**

**Particular Things to Be Seized from Device Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government, the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cellular Device for the time period of January 1, 2026, to PRESENT:

    i. Names (including subscriber names, usernames, and screen names);

    ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii. Local and long-distance telephone connection records;

    iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v. Length of service (including start date) and types of service utilized;

    vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

    viii. All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and

2

memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

    ix.  Means and source of payment for such service (including any credit card or bank account number) and billing records; and

    x.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cellular Device, including:

(A)  Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and specialized location data including timing advance, RTT, LOCDBOR, or equivalent pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c); and
(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received)

b.  Information associated with each communication to and from the Target Cellular Device for a period of 30 days from the date of this warrant, including:

    i.  Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

    ii.  Source and destination telephone numbers;

    iii.  Date, time, and duration of communication; and

    iv.  All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cellular Device will connect at the beginning and end of each communication

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cellular Device.

c.  Information about the location of the Target Cellular Device for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

    i.  To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or

3

control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cellular Device on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii.   Information about the target cellular device and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, specialized location data including timing advance, RTT, LOCDBOR, or equivalent, and real time cell site information for 30 days beginning from the date the warrant was issued.  This includes initiating a signal to determine the location of the Target Cellular Device on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Federal Bureau of Investigation. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41.  The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

iii.  This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

d.  The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or

4

representative who gains access to the information in this warrant shall not disclose the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

e. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that will assist in the investigation of Richard FAY regarding violations of Title 18 U.S.C. § 922(g)(1) (Possession of Firearm by Convicted Felon), and Title 21 U.S.C. § 841(a)(1) (Manufacture/Delivery of a Controlled Substance) between January 1, 2026, and the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in these Warrants.

5

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

information about the location of the cellular
telephone assigned call number 414-736-5216

)
)
)
)
)
)
)

Case No. 26-931M(NJ)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Please see Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Possession of Firearm by Convicted Felon |
| 21 U.S.C. § 841(a)(1) | Manufacture/Delivery of a Controlled Substance |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

PAUL KOZELEK
Digitally signed by PAUL KOZELEK
Date: 2026.04.24 15:58:24 -05'00'

*Applicant's signature*

Paul Kozelek, Special Agent - ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: 4/27/2026

*Judge's signature*

City and state: Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF**</u>
<u>**AN APPLICATION FOR A SEARCH WARRANT**</u>

I, Special Agent Paul Kozelek, being first duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1)      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 414-736-5216 (the "Target Cellular Device"). This information is in the custody or control of AT&T located at 11760 U.S. Highway 1, Suite 300 North Palm Beach, FL 33408, and Dish Wireless LLC located at 9601 S. Meridian Blvd Englewood, CO 80112. The Target Cellular Device is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2)      The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

3)      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

4)      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since January of 2020.  Prior to my employment with ATF, I

was a Sheriff's Deputy with the Jackson County Sheriff's Office in Black River Falls, WI. My duties included patrol, drafting and executing search warrants, and investigations related to state and county criminal violations. Previous to my tenure with the Jackson County Sheriff's Office, I served with the United State Marine Corps from 2004 until 2008, and the United States Marine Corps Reserve from 2011 until 2014. I left the Marine Corps as an E6/Staff Sergeant holding the billet of Platoon Commander. I received my bachelor's degree in Criminal Justice Administration from Viterbo University, La Crosse, Wisconsin, in 2016.

5) I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy. That training included various legal courses related to constitutional law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection. During my time at ATF, I have attended specialized training from the ATF related to the determining the interstate NEXUS of firearms and ammunitions. I regularly perform physical examinations of firearms and ammunition for various purposes, including a determination of interstate/foreign commerce nexus and appropriate classification under the Gun Control Act of 1968. I have conducted investigations of firearms related offenses, narcotics-related offenses, arson and explosives related investigations including, armed carjackings, robberies, firearms and narcotics trafficking, and arsons. I have also interviewed multiple individuals involved in firearms and drug trafficking, obtaining information regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances, resulting in prosecutions, convictions and the seizure of illegal drugs and weapons. Furthermore, through the use of various investigative techniques, including search warrants, I have become familiar with cell site data and other related

2

cell phone company records.

6) The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

7) Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(g)(1) (Possession of Firearm by Convicted Felon), and 21 U.S.C. § 841(a)(1) (Manufacture/Delivery of Controlled Substance), have been committed by Richard A. FAY (DOB xx/xx/1979). There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

8) Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

9) This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

1) On January 6, 2026, ATF received an anonymous tip stating Richard A. FAY (M/W DOB XX/XX/1979) (herein FAY) was a convicted felon and in possession of firearms. The following was summary of the anonymous tip, as reported to the ATF's online reporting platform:

3

Richard Fay lives on 1356 S 57th and he is a convicted felon that is not supposed to have firearms or access to them. He has multiple fire arms ranging in sizes but mostly 9mm handguns but all of the firearms are registered to his wife Melissa although he is the one that shoots them. He has made many comments of always carrying a gun even though he is not supposed to or he needs to make sure that he has someone else in the car with him so that if he got pulled over he will not be in trouble for having it in the car. I have also heard him personally say that the only good cop is a dead cop on the side of the road and that they should all be gunned or mowed down. He also keeps large amounts of marajuana [sic.] in his house.

2) The anonymous tip stated FAY lived at 1356 S. 57th Street (in West Allis, WI) (herein **TARGET RESIDENCE**). The tip stated FAY was in possession of multiple firearms, and that they were "registered" to his wife "Melissa", later determined to be Melissa M. FAY (F/N DOB XX/XX/1980) (herein M. FAY). The tip provided a Facebook profile of https://www.facebook.com/rich.fay.73/photos for FAY. FAY was described as driving a Chevy Impala, silver in color bearing WI license plate ALU2445.

3) Your affiant reviewed the criminal history for FAY and found the following prohibitors: (Felony) 8/30/1998 Milwaukee County Circuit Cout Case #98CF004553 – WI Statute 939.05 – Discharge Firearm/Vehicle Towards Person; (Misdemeanor punishable by more than 1 year) 3/5/2002 – Milwaukee County Circuit Court case #402001CM009617 – WI Statute 946.41(1) Resist/Obstruct with 939.62 Habitual Criminality; (Misdemeanor punishable by more than 1 year) 3/5/2002 – Milwaukee County Circuit Court case #402001CM009617 – WI Statute 941.01 Disorderly Conduct with 939.62 Habitual Criminality; (Misdemeanor punishable by more than 1 year) 3/5/2002 – Milwaukee County Circuit Court case #402001CM009617 – WI Statute 941.01 Disorderly Conduct with 939.62 Habitual Criminality

4) The tip provided several photographs. The first showed a white male with a distinctive face tattoo over his right eye taking a "selfie" photo. The male was standing next to a red brick house consistent with **TARGET RESIDENCE.** The male was pointing a Glock pistol at the camera. See figure 1 below. Based on your affiant's training and experience, the markings

4

visible on the pistol along with the rifling visible in the barrel shows the pistol in the photograph is highly likely to be a real firearm. Based on information described below in paragraph 13 and 14, the photo in figure 1 is reversed as FAY's tattoo is above his left eye. Also, your affiant has observed the rear of **TARGET RESIDENCE** and found that the orientation of the grill and the rear door is also reversed in the photo. This along with FAY's body position shows this photo was a "selfie" which would have been taken on his cellular device.



(Figure 1)

5)     The second screen shot showed three AR type firearms. A text bubble under the picture said, "New one in the middle". Based on the tip it was implied that FAY was the one who

5

sent the picture to the tipster, but that hasn't been confirmed due to the fact that that identity of

the tipster is unknown to law enforcement. *See* Figure 2 below.



(Figure 2)

6)      The third screenshot showed a scale with two bowls next to it. The bowls

contained similar amounts of a green leafy substance which appeared to be marijuana. Text

bubbles under the picture said "Now that's a sack", and "1k worth". Based on my training and

experience, the term "sack" refers to a bag of marijuana.   In addition, the table in the photograph

appears consistent with the kitchen table from Richard FAY's residence (**TARGET

RESIDENCE)** captured in the body camera footage referenced in Paragraph 13 below and in

Figure 10 below.  *See* Figure 3.

6



(Figure 3)

7) The fourth screenshot showed two pictures of a Sig Sauer model M17 pistol. A text bubble under the picture said "Got it this morning dunhams called wife last night see the optic cut I have an optic on Way". In addition, the white cabintry in the background of the photographs appears consistent with the cabinets in FAY's kitchen (**TARGET RESIDENCE**) as captured in the body camera footage described in Paragraph 10 and in Figure 10 below. *See* Figure 4.

7



(Figure 4)

8) Your affiant reviewed the social media account in the tip. Your affiant observed Facebook page https://www.facebook.com/rich.fay.73/photos. *See* Figure 5. Photos of FAY on the account matched the male in Figure 1.



(Figure 5)

9) Your affiant reviewed FAY's WI driver license photo which also showed a male who was consistent with the male from Figure 1. The driver license showed an issued date of 4/7/2021 and appeared to be taken prior to the distinctive face tattoo. The driver license photograph of FAY, the male in the Facebook page photos, and the male in the photo from the tip were all consistent and showed the same person. In addition, the address for FAY's driver license registrations showed 1356 S. 57th St. in West Allis, WI.

10) On January 8, 2026, your affiant contacted Dunham's Sports regarding any firearms purchases made by M. FAY. Your affiant was informed there were no known purchases by M. FAY in either her married or maiden name.

11) On January 9, 2026, your affiant conducted surveillance at **TARGET RESIDENCE**. Your affiant observed M. FAY walk to the front of the residence from the paved walkway leading from the rear entrance. M. FAY walked north on the sidewalk to a corner store. A short time later M. FAY walked south on S. 57th St. and used the paved walkway to go to the rear entrance of **TARGET RESIDENCE**.

12) On January 22, 2026, your affiant conducted a trash pull at **TARGET RESIDENCE**. Your affiant found multiple items of indicia showing FAY and M. FAY residing at **TARGET RESIDENCE**, including multiple pieces of mail addressed to each of them. Your affiant also recovered a corner tied baggie which your affiant knows from training and experience to be a common means to store and transport illegal narcotics. There was no residue inside the baggie which could be tested. *See* Figure 7 below. Your affiant found four empty single dose baggies of Buprenorphine and Naloxone subungual film, 8mg/2mg. This prescription medication is used to treat opioid addiction. *See* Figure 8 below.

9



(Figure 7)



(Figure 8)

10

13) On February 9, 2026, your affiant reviewed body camera footage from the West Allis Police Department. The footage showed that on August 25, 2025, officers went to **TARGET RESIDENCE** to investigate a shoplifting incident related to a juvenile son of M. FAY. While at the residence Officers spoke with FAY who verbally identified himself. The video showed the same male from Figure 1 and was consistent with the other photographs of FAY. *See* Figure 9 for a still shot of the body camera footage.



(Figure 9)

Also captured on the body camera footage was a "bong" sitting on the kitchen table. A "bong" is a device used to smoke marijuana, along with multiple other items of drug paraphernalia. *See* Figure 10 below.

11



(Figure 10)

14)     Your affiant has reviewed body camera footage of a traffic stop conducted by West Allis Police Department on January 13, 2026. The traffic stop was on a silver Chevy Impala had expired registration. The footage showed FAY was the driver and sole occupant. FAY provided his driver's license to the officer and stated the vehicle belonged to his wife. The officer asked FAY if he still lived "on 57th". Fay replied, "Yup, that's where I just left." FAY provided the officer with phone number 414-736-5216, a phone number serviced by Boost Mobile and whose service data is controlled by AT&T and Dish Wireless LLC. *See* Figure 11 below.

12



(Figure 11)

15) Your affiant reviewed law enforcement databases and found the phone number assigned to FAY was 414-736-5216. As described in paragraph 14 above, FAY provided this phone number to West Allis Police on January 13, 2026. This traffic stop was nine days after your affiant was provided the tip. The phone number was determined to be serviced by Boost Mobile LLC. On April 20, 2026, Boost Mobile LLC provided records showing that phone number 414-736-5216 has been subscribed to FAY from April 27, 2023, to the present. Therefore, your affiant believes there is probable cause to show that evidence exists on the cellular device of Richard FAY.

13

16)     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

### CELL-SITE DATA

17)     Based on my training and experience, I know that Service Providers can collect cell-site data on a prospective basis about the Target Cellular Devices. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Providers typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

14

18) Based on my training and experience, I know that the Service Providers can collect per-call measurement data, which the Service Providers also refer to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

19) Based on my training and experience, I know that AT&T and Dish Wireless LLC also can collect per-call measurement data, which AT&T and Dish Wireless LLC also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

### E-911 PHASE II / GPS LOCATION DATA

20) I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to

15

or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Providers can collect E-911 Phase II data about the location of the Target Cellular Devices, including by initiating a signal to determine the location of the Target Cellular Devices on the Service Providers' network or with such other reference points as may be reasonably available.

## PEN-TRAP DATA

21) Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## SUBSCRIBER INFORMATION

22) Based on my training and experience, I know that wireless providers such as the Service Providers typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Providers typically collect and retain information about their

16

subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cellular Devices' user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

23) Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the Target Cellular Device, without geographic limit, for a period of thirty (30) days pursuant to 18 U.S.C. § 3123(c)(1).

24) I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the

17

extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

25) I further request that the Court direct AT&T and Dish Wireless LLC to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T and Dish Wireless LLC. I also request that the Court direct AT&T and Dish Wireless LLC to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T and Dish Wireless LLC's services, including by initiating a signal to determine the location of the Target Cellular Device on AT&T and Dish Wireless LLC's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T and Dish Wireless LLC for reasonable expenses incurred in furnishing such facilities or assistance.

26) I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

# ATTACHMENT A

## Property to Be Searched

1. Records and information associated with the cellular device assigned (414)-736-5216 (referred to herein and in Attachment B as "the Target Cellular Device"), that is in the custody or control of AT&T and Dish Wireless LLC (referred to herein and in Attachment B as the "Provider"), AT&T is located at 11760 U.S. Highway 1, Suite 300 North Palm Beach, FL 33408, and Dish Wireless LLC is located at 9601 S. Meridian Blvd Englewood, CO 80112.

2. The Target Cellular Device.

**Particular Things to Be Seized from Device Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government, the following information pertaining to the Account listed in Attachment A:

    a.  The following subscriber and historical information about the customers or subscribers associated with the Target Cellular Device for the time period of January 1, 2026, to PRESENT:

        i.  Names (including subscriber names, usernames, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long-distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

        viii.  All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and

2

memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

    ix.  Means and source of payment for such service (including any credit card or bank account number) and billing records; and

    x.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cellular Device, including:

(A)  Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and specialized location data including timing advance, RTT, LOCDBOR, or equivalent pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c); and

 (ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received)

b.  Information associated with each communication to and from the Target Cellular Device for a period of 30 days from the date of this warrant, including:

    i.  Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

    ii.  Source and destination telephone numbers;

    iii.  Date, time, and duration of communication; and

    iv.  All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cellular Device will connect at the beginning and end of each communication

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cellular Device.

c.  Information about the location of the Target Cellular Device for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

    i.  To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or

3

control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cellular Device on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. Information about the target cellular device and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, specialized location data including timing advance, RTT, LOCDBOR, or equivalent, and real time cell site information for 30 days beginning from the date the warrant was issued. This includes initiating a signal to determine the location of the Target Cellular Device on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Federal Bureau of Investigation. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

iii. This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

d. The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or

4

representative who gains access to the information in this warrant shall not disclose the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

e. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that will assist in the investigation of Richard FAY regarding violations of Title 18 U.S.C. § 922(g)(1) (Possession of Firearm by Convicted Felon), and Title 21 U.S.C. § 841(a)(1) (Manufacture/Delivery of a Controlled Substance) between January 1, 2026, and the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in these Warrants.

5

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by AT&T and/or Dish Wireless LLC, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of AT&T and/or Dish Wireless LLC. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of AT&T and/or Dish Wireless LLC, and they were made by AT&T and/or Dish Wireless LLC as a regular practice; and

b. such records were generated by AT&T and/or Dish Wireless LLC's electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of AT&T and/or Dish Wireless LLC in a manner to ensure that they are true duplicates of the original records; and

6

2.     the process or system is regularly verified by AT&T and/or Dish Wireless LLC and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____

Date                                Signature

Case 2:26-mj-00931-NJ   Filed 04/27/26   Page 33 of 33   Document 1